IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | )  Criminal Action No. 14-00221-KD-M |
| | ) |
| RONNIE PERNELL JOHNSON, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on Defendant Ronnie Pernell Johnson's *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and supporting documentation (Docs. 50, 52) the United States' response (Doc. 54), and Johnson's medical records (Doc. 56, SEALED). Upon consideration, and for the reasons set forth herein, the motion is **DENIED**.

**I.     Background**

In August 2014, Defendant Ronnie Pernell Johnson (Johnson) was charged in a nine count indictment for three counts of possessing cocaine with the intent to distribute, three counts of possessing cocaine with the intent to distribute, and distributing it, near a school, and three counts of possessing a firearm in furtherance of a drug trafficking crime. (Doc. 1). Johnson pled guilty to one count of possession with the intent to distbribute (Count 7) and one count of possession of a firearm in furtherance of a drug trafficking crime (Count 9). (Doc. 17 (plea agreement); Doc. 19 (text only order on guilty plea)). Johnson had a criminal history category of I, a total offense level of 21 and his Sentencing Guidelines range was two consecutive sentnces of 60 months in prison. In January 2015, he was sentenced to serve 120 months, 60 months as to Count 7 and 60 months as to Count 9, said terms to run consecutively, with four years supervised release as to Counts 7 and 9 to run concurrently. (Doc. 32).

Johnson is now 40 years old. His release date is August 7, 2023 and he is currently incarcerated at FPC Pensacola in Pensacola, Florida. As of May 7, 2021, no staff members or inmates were positive for COVID-19, 35 inmates and 23 staff members had recovered. *COVID-19 Cases,* https://www.bop.gov/coronavirus/ (last updated May 7, 2021). No deaths have been reported. Id.[1]

## II.     Procedural requirements

Before Section 603(b) of the First Step Act of 2018 was enacted, the district court could grant a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), the compassionate release provision, only if the Director of the Bureau of Prisons filed the motion. Now, in relevant part, the statute, as amended by the First Step Act of 2018, provides that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment…

18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

The United States agrees that Johnson has met the procedural requirements and is properly before the Court because the "Warden at his facility received his administrative request for compassionate release more than 30 days before he filed his motion." (Doc. 54 at 9). The Warden denied Johnson's request on January 28, 2021. (Doc. 52 at 1). Johnson filed his motion in this Court February 17, 2021 and it was docketed February 22, 2021. (Doc. 50 at 5).[2] Presumably, the Warden

---

[1] Johnson contends "Hundreds of individuals on the [FPC Pensavola] compound (Staff members and Inmates) have tested positive for COVID-19 and it is spreading through the institution." (Doc. 50 at 3). The BOP website does not indicate this is the case.

[2] Although Johnson's pro se motion was filed in the District Court for the Southern District of Alabama February 22, 2021, under the "mailbox rule" it is deemed filed on the date that he delivered it to the prison authorities for mailing— presumably February 17, 2021. See e.g., (Doc. 50 at 5). Jones v. U.S., 304 F.3d 1035, 1038 n. 7 (11th Cir. 2002).

received Johnson's request prior to January 28, 2021 but neither the Warden's denial nor Johnson's motion indicate when he submitted his request to the Warden.

Even though the Court cannot determine whether Johnson waited 30 days before filing his motion with this Court, in this procedural posture, the Court sees no reason to dismiss the motion without prejudice. See United States v. Skaff, 2020 WL 3490074, at *1 (S.D.W. Va. June 25, 2020) ("Although Mr. Skaff petitioned the court on June 4, 2020, before 30 days had passed since the Warden's receipt, I find it would be a waste of judicial resources to have Mr. Skaff refile the motion now that 30 days have elapsed since the Warden's receipt of the compassionate release request."); United States v. Blake, No. 15-CR-80018, 2020 WL 4677309, at *4 (S.D. Fla. Aug. 12, 2020) (same).

Moreover, the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) "is a claim-processing rule [a]nd whether it is mandatory or not" the United States did not argue that Johnson forfeited his right to move the Court for compassionate release by failing to wait 30 days before filing his motion. United States v. Harris, 989 F. 3d 908 (11th Cir. 2021). Thus, Johnson's motion is properly before this Court.

### III.     Compassionate release

Even though Johnson exhausted his administrative remedies, he has not shown at this juncture that "extraordinary and compelling" reasons warrant a reduction in sentence as discussed *infra*. See 18 U.S.C. § 3582(c)(1)(A). Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 730 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)," if the Court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The applicable Policy Statement, U.S.S.G. § 1B1.13, has not been amended since the enactment of the First Step Act. Therefore, the Sentencing Commission has not set out the policy to apply when inmates file the motion. Instead, the Policy Statement sets out the policy to apply "[u]pon motion of the Director of the Bureau of Prisons." Id.

However, in United States v. Granda, - - - Fed. Appx. - - -, 2021 WL 1246252, at *1 (11th Cir. Apr. 5, 2021), the Eleventh Circuit recently stated:

> We've not yet held in a published opinion whether § 1B1.13, which on its face applies only to motions for compassionate release filed by the BOP and has not been amended following the First Step Act, constrains district courts in considering compassionate release motions filed by prisoners themselves. However, we've held that the district court's consideration of the policy statements in § 1B1.13 was not an abuse of discretion.

Granda, 2021 WL 1246252, at *1 (citing United States v. Harris, - - - F. 3d - - -, 2021 WL 745262, *3 & n.2 (11th Cir. Mar. 2, 2021).

The Eleventh Circuit further states that:

> Section 3582(c)(1)(A) still requires any reduction to be consistent with the sentencing commission's applicable policy statements. The policy statements applicable to § 3582(c)(1)(A) are found in U.S.S.G. § 1B1.13 and provide that the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a),[1] to the extent that they are applicable," it finds, in relevant part, that extraordinary and compelling reasons warrant the reduction. The court must determine that the defendant is not a danger to the safety of any other person or to

> the community, as provided in 18 U.S.C. § 3142(g), <u>before</u> it can determine whether extraordinary and compelling reasons exist. U.S.S.G. § 1B1.13; id., comment. (n.1). In determining whether an individual is a danger to others, the court can consider: (1) the offenses' nature and circumstances; (2) the weight of the evidence against the person; (3) the person's history and characteristics; (4) the nature and seriousness of the danger to any person of the community that would be posed by the person's release. 18 U.S.C. § 3142(g).
>
> \*\*\*
>
> Footnote 1.  The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

<u>United States v. Granda</u>, 2021 WL 1246252, at \*1 (underlining in original).

Johnson contends he "qualifies for compassionate release due to his medical issues including hypertension, high cholesterol, Dyslipidemia (abnormal levels of lipids; cholesterol/triglycerides) pre-diabetes, shortness of breath, and family history of heart disease." (Doc. 50 at 1). He continues, alleging he is "more genetically predisposed to developing high blood pressure and disabetes and [has] a greater chance of contracting the COVID-19 virus" because he is a black male. (<u>Id.</u>). According to Johnson, these medical conditions "constitute extraordinary and compelling reasons justifying compassionate release." (<u>Id.</u> at 3). He also alleges that the number of people with COVID-19 at FPC Pensacola, the rate COVID-19 is spreading throughout the institution, and the inability to socially distance, coupled with Johnson's health conditions, "substantially diminishes his ability to provide self-care within FPC Pensacola." (Doc. 50 at 3).

Johnson argues he has served over 60% of his time and that his "post conviction rehabilitation efforts show that Defendant is not a danger to the community." (Doc. 50 at 1, 5). Moreover, Johnson points out that he "has been working at UNICOR Laundry since September 2019 at Eglin Air Force Base" which shows he "poses no danger to any of the military personnel, and therefore, does not pose a danger to the community." (Id. at 5). Johnson also states he has completed numerous programs while incarcerated at FCP Pensacola. (Id.). He identifies a home plan if released too. (Id.).

The United States responds that Johnson's "medical records do not corroborate his assertions about his physical condition." (Doc. 54 at 10 (citing Doc. 56 SEALED)). As a result, the United States contends "Johnson has not carried his burden to show the premise of his motion—that he is medically vulnerable to COVID-19—and is therefore not eligible for compassionate release consideration." (Id.).

To qualify as extraordinary and compelling, an inmate's medical condition must be "serious and advanced…with an end of life trajectory," or must be serious enough that it "substantially diminish[es] the ability of the [inmate] to provide self-care within the environment of a correctional facility and…he or she is not expected to recover [from it]." U.S.S.G. § 1B1.13, cmt. n.1(a)(i). Here, Johnson's medical records do not reflect Johnson has any of the conditions alleged.[3] Thus, Johnson has not shown an extraordinary and compelling reason to reduce his sentence based on underlying medical conditions. And risk of contracting COVID-19 alone is not enough. United States v. Bogan, 2020 WL 5441556, at *1 (M.D. Ala. Sept. 10, 2020) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)). And see United States v. Linder, 2020 WL 6747751, at *4 (S.D. Fla. Nov. 17, 2020) (same).

IV. **Conditions of Confinement**

---

[3] Johnson's medical records show that he had COVID-19 in January 2021. (Doc. 56 at 17, 19, 21).

Johnson also complains of his conditions of confinement. He complains that there are hundreds of COVID-19 positive individuals at FPC Pensacola,[4] it is impossible to socially distance, and there are crowded conditions which exacerbate the COVID-19 related risks. (Doc. 50 at 3). He claims a dorm has been condemned after Hurricane Sally, "mold, mildew, fungi, and bacteria are present throughout the dormitory," there is "no proper heating or cooling, no hot water in the bathrooms," "[d]ust and mold…throughout the building," "[i]nsulation is falling from the interior tiles/ceiling," and the roof leaks when it rains, leaving puddles. (Doc. 50 at 3-4).[5] However, claims that concern conditions of a prisoner's confinement are *Bivens* actions. See Hill v. McDonough, 547 U.S. 573, 579 (2006) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus. An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983.") (citations omitted). And, claims that federal prison officials violated an inmate's constitutional rights would fall under *Bivens*, not 42 U.S.C. § 1983, which addresses claims against state officials. Regardless, the same case law is generally applied to both *Bivens* and § 1983 cases. See Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995).

Also, to the extent that Johnson's claim could be construed as a civil rights claim against officials at FPC Pensacola for violations of his constitutional rights, this Court lacks personal jurisdiction. Those claims must be brought in the district court in the district where the prison officials reside or are employed. See Cosby v. United States, 2009 WL 2821843 (M.D. Ga. 2009) ("Moreover, the FMC–Carswell defendants reside, and are employed, in Fort Worth, Texas, which is in the Northern District of Texas. Therefore, plaintiff's claims against these defendants may not be pursued in this Court because this Court lacks personal jurisdiction over them and venue is

---

[4] As noted *supra*, the Bureau of Prisons website contradicts this assertion.

improper.") (citations omitted). And, to the extent that this could be construed as a civil rights claim against the Bureau of Prisons, the Court lacks subject matter jurisdiction. Nalls v. Coleman Low Federal Inst., 307 Fed.Appx. 296, 298 (11th Cir. 2009) ("As an initial matter, the district court lacked subject matter jurisdiction over Nalls's claims against the Bureau of Prisons because Bivens does not extend to federal agencies").

## V. Conclusion

For the reasons discussed herein, Defendant Johnson's motion for compassionate release (Doc. 50) is **DENIED**.

**DONE** and **ORDERED** this **10th** day of **May 2021**.

                                            s / Kristi K. DuBose
                                            **KRISTI K. DuBOSE**
                                            **CHIEF UNITED STATES DISTRICT JUDGE**

---

[5] Johnson also references an attached letter from former Congressman Chris Collins regarding the "horrific conditions at Pensacola FPC." (Doc. 50 at 3 (citing Doc. 50 at 6-10)).